OPINION
{¶ 1} This is an accelerated appeal from a judgment entry of the Ashtabula County Common Pleas Court granting appellee's, Robert J. Neumann's, motion to enforce settlement agreement. The settlement in question was in the amount of $100,000 and resulted from a motor vehicle accident in which appellant, Joseph P. Thirion, sustained serious personal injuries.
 {¶ 2} Thirion sued Neumann for his injuries and was represented from the inception by Attorney Ralph C. Buss. On July 18, 2002, Buss sent a letter to Joseph H. Wantz, the attorney representing Neumann in the litigation then pending in Ashtabula County Common Pleas Court, and demanded the sum of $100,000 in settlement of Thirion's claim. In the letter, Buss itemized Neumann's medical expenses ($42,044.17) and stated his understanding of the policy limits for Neumann's coverage to be $100,000.
 {¶ 3} On November 5, 2002 and November 7, 2002, Buss and Arnold Dudt, a claims adjuster representing Neumann's insurance company, engaged in phone conversations in which settlement of the claim was discussed. In the November 5th conversation, Dudt offered the sum of $85,000 to settle the claim, and in the November 7th conversation, which Buss had initiated, Dudt agreed to pay $100,000 in settlement of the claim. Dudt followed up the conversation in a letter dated November 8, 2002, in which he reiterated the terms of his conversation the day before: pay the policy limits of $100,000, in return for which Thirion would execute a full and final release, and Thirion would be responsible to satisfy the subrogation claim of his medical providers.
 {¶ 4} On November 21, 2002, Buss again wrote to Attorney Wantz, stating a slightly higher amount of medical bills ($44,928.17), but reneging on the settlement entered into between him and Dudt.
 {¶ 5} On December 10, 2002, Neumann filed a motion to enforce settlement agreement, which the court granted on December 30, 2002.
 {¶ 6} Thirion then lodged the first appeal on this matter, which resulted in this court remanding the matter to the trial court for an evidentiary hearing to determine whether a settlement agreement existed.[1] This court cited as our authority for doing so the case of Rulli v. Fan Company.[2]
 {¶ 7} On February 24, 2004, the trial court conducted an evidentiary hearing. At the hearing, Buss testified that he could not recall accepting the $100,000 offer and that he could not recall if he had authority to accept the offer. He did, however, acknowledge receiving Dudt's letter of November 8, 2002, summarizing the previous day's conversation, and when asked whether he had any reason to believe that he did not agree to the settlement for policy limits, he answered, "[n]ot really."
 {¶ 8} When further examined relative to his own letter of November 21, 2002, Buss was asked whether his letter indicated Thirion had initially accepted the offer, and Buss answered, "[t]he language seems to point in that direction."
 {¶ 9} Finally, when asked whether Thirion initially accepted the offer and then later changed his mind, Buss answered, "[t]he first sentence seems to indicate that." Buss further testified that Thirion was concerned about the repayment of the medical expenses out of the settlement proceeds.
 {¶ 10} On April 19, 2004, the trial court granted Neumann's motion to enforce settlement agreement; ordered Neumann's insurance company to issue a check for $100,000 to Thirion, Buss, and the medical expense recovery agent; and ordered Thirion to sign a full and final release therefor.
 {¶ 11} Thirion timely filed an appeal of that order to this court, assigning a single assignment of error:
 {¶ 12} "Based on the evidence elicited at the February 24, 2004 evidentiary hearing the trial court erred and abused its discretion by granting appellee's motion to enforce settlement."
 {¶ 13} The standard of review depends on whether the issue is a mixed question of law and fact, or whether it is purely a question of law:
 {¶ 14} "The standard of review applicable to a ruling on a motion to enforce a settlement agreement depends upon the issues disputed, and may present a mixed question of law and fact. * * * If the dispute is an evidentiary one, we will not reverse the trial court's determination that a settlement exists as long as the trial court had sufficient evidence before it as to the terms of the settlement. * * * If the dispute is a question of law, we must employ de novo review to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law."[3]
 {¶ 15} Inasmuch as the trial court was to determine the existence of a settlement agreement and the terms thereof, we believe our standard of review is based on a mixed question of law and fact. Pursuant to our previous decision in this matter and the Rulli case, the trial court conducted an evidentiary hearing to determine these issues. It found:
 {¶ 16} "[O]n November 7, 2002, there was an offer and acceptance, supported by adequate consideration, resulting in a verbal agreement as to all of the terms and conditions of settlement between the parties; that the verbal agreement is valid and binding and resulted in a full and complete settlement of this litigation. Pursuant to the settlement agreement, the defendant's insurance company shall pay the sum of $100,000.00 to the plaintiff and the plaintiff shall execute a full and complete release of the defendant."
 {¶ 17} We start with the proposition that "a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party."[4]
That a client is bound by the acts of his attorney is likewise a well accepted principle: "each party is deemed bound by the acts of his lawyer-agent and is considered to have `notice of all facts, notice of which can be charged upon the attorney.'"[5] Therefore, "a settlement agreement can not be set aside solely upon the basis that one of the parties has changed its mind."[6]
 {¶ 18} Thirion contends that there was insufficient evidence for the trial court to conclude that a settlement agreement was reached in the conversation between Buss and Dudt on November 7, 2002. However, "[i]t is within the sound discretion of the trial court to enforce a settlement agreement, and its judgment will not be reversed where the record contains some competent, credible evidence to support its findings regarding the settlement."[7]
 {¶ 19} At the evidentiary hearing conducted by the trial court, Buss testified that he could not recall accepting Dudt's offer of $100,000, and could not recall having authority from his client to do so, but he did acknowledge making a demand by letter, of which his client was sent a copy, for that amount. Nor, as he testified, did he have any reason to believe that a settlement agreement was not reached in his second phone conversation with Dudt. Further, he acknowledged receiving a letter dated November 8, 2002 from Dudt, which summarized the conversation of the previous day, and which stated that a settlement was agreed to by Buss. Finally, he acknowledged that his own letter sent two weeks after the phone conversation indicates that an agreement was reached, but that his client had "reconsidered" and changed his mind.
 {¶ 20} At the hearing, Dudt, the claims adjuster, testified that he believed a settlement agreement was achieved in his second phone conversation with Buss. Buss did not introduce any evidence at the hearing.
 {¶ 21} We believe the trial court had sufficient evidence, based upon the evidence and testimony at the hearing, to conclude as it did; and we will not disturb that conclusion. "[A]n appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings."[8]
 {¶ 22} The trial court had competent and credible evidence from Buss' own testimony to support the conclusion that a valid settlement agreement existed and that its terms and conditions were agreed upon between the parties.
 {¶ 23} At oral argument, counsel for Thirion directed this court's attention to the fact that the release document proposed by the insurance company would require Thirion to release additional parties not contemplated in the settlement agreement reached between Buss and Dudt on November 7, 2002. Counsel argues that the fact that additional parties are reflected in the release document serves to corroborate that no settlement agreement was reached between the parties. However, we disagree. The only "settlement agreement" document in the record before us is the November 8, 2002 letter from Dudt. There is no evidence of any additional parties to be released that are reflected in that document.
 {¶ 24} Appellant's assignment of error is without merit.
 {¶ 25} The judgment granting Neumann's motion to enforce settlement agreement is affirmed.
Ford, P.J., Grendell, J., concur.
[1] Thirion v. Neumann, 11th Dist. No. 2003-A-0006, 2003-Ohio-6419.
[2] Rulli v. Fan Co. (1997), 79 Ohio St.3d 374.
[3] (Citations omitted.) Barstow v. O.U. Real Estate, III, Inc., 4th Dist. No. 01CA49, 2002-Ohio-4989, ¶ 36.
[4] Continental W. Condominium Unit Owners Assn. v. Howard E.Ferguson, Inc. (1996), 74 Ohio St.3d 501, 502.
[5] Link v. Wabash RR. Co. (1962), 370 U.S. 626, at 633-34, quotingSmith v. Ayer (1880), 101 U.S. 320, 326.
[6] Mentor v. Lagoons Point Land Co. (Dec. 17, 1999), 11th Dist. No. 98-L-190, 1999 Ohio App. LEXIS 6127, at *8, citing Mack v. Polson RubberCo. (1984), 14 Ohio St.3d 34.
[7] (Citation omitted.) Id. at *11.
[8] State ex rel. Celebrezze v. Environmental Enterprises, Inc.
(1990), 53 Ohio St.3d 147,154 (Resnick, J., concurring in part and dissenting in part).